**Frank EIDMANN, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**No. 91–3587.**

United States Court of Appeals, Federal Circuit.

Sept. 4, 1992.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Nov. 17, 1992.

---

William M. Connor, Billet & Connor, Philadelphia, Pa., argued, for petitioner.

Patricia A. Price, Attorney, Merit Systems Protection Bd., of Washington, D.C., argued, for respondent. With her on the brief were Mary L. Jennings, Acting Gen. Counsel and Martha B. Schneider, Asst. Gen. Counsel.

Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The Merit Systems Protection Board (Board) disciplined Mr. Frank Eidmann for violating 5 U.S.C. § 2302(b)(8) (Supp. II 1990), the Whistleblower Protection Act of 1989 (WPA), Pub.L. No. 101–12, 103 Stat. 16 (1989). *Special Counsel v. Eidmann,* 49 M.S.P.R. 614 (1991). Because the record shows that Mr. Eidmann retaliated against Mr. Andrew Levin for protected whistleblowing, this court affirms.

## BACKGROUND

Mr. Eidmann was a GS–11 Administrative Officer with the Farmers Home Administration (FmHA), an agency of the Department of Agriculture, at Holly Hills, New Jersey. As part of his overall management responsibilities, Mr. Eidmann counselled employees on their rights, benefits, and duties. Mr. Eidmann reported directly to the agency's state director, Mr. Gouryeb.

Mr. Levin, the victim of Mr. Eidmann's reprisal, began his employment as Assistant County Supervisor at the FmHA's Woodstown, New Jersey office on May 23, 1988. Mr. Levin was a probationary employee at the time of the reprisal.

Mr. Levin's duties required him to spend one to two hours each day in the general clerical area of the Woodstown office. On June 13, 1988, one of the other Woodstown office employees announced her intention to smoke in the general clerical area. Mr. Levin protested. An argument ensued, but resolved nothing. Mr. Levin tried, without success, to resolve the dispute with the acting office head.

On June 20, 1988, Mr. Levin telephoned Mr. Eidmann at FmHA's New Jersey headquarters. Mr. Levin complained about smoking in a common work area. Mr. Eidmann disagreed with Mr. Levin's interpretation of the agency smoking regulations. Mr. Eidmann felt that, under the circumstances, the regulations allowed smoking in the general clerical area. On June 22, Mr. Eidmann sent Mr. Levin a letter to this effect, which also advised that a new employee could not afford to focus on "mat-

ters unrelated to the duties of [his] position." *Eidmann*, 49 M.S.P.R. at 617–18.

On June 24, 1988, Mr. Levin wrote to the agency's health and safety officer, Mr. Pope. Mr. Levin told Mr. Pope of the Woodstown office smoking situation. Mr. Levin felt this situation conflicted with agency health regulations.

On July 21, 1988, Mr. Levin informed his union vice president, Mr. Evans, of the problem at the Woodstown office. That same day, Mr. Evans conveyed Mr. Levin's complaints to Mr. Eidmann. Mr. Eidmann maintained that the Woodstown smoking situation did not violate agency policy. On August 3, 1988, Mr. Levin again asked Mr. Pope to intervene in the Woodstown office affair.

In early August, 1988, Mr. Eidmann and Mr. Gouryeb jointly drafted a termination letter to Mr. Levin. Mr. Eidmann and Mr. Gouryeb planned to deliver the letter to Mr. Levin on August 15. Mr. Levin's immediate supervisors, however, persuaded them to reconsider. These supervisors felt Mr. Levin's performance was satisfactory and his complaints about the smoking policy did not warrant dismissal.

On August 15, 1988, Mr. Eidmann, having decided to merely counsel Mr. Levin, met with him and one of his supervisors. At this meeting, Mr. Eidmann learned that Mr. Levin had taken his complaint outside of the agency's New Jersey office to Mr. Pope. Mr. Levin also vowed to pursue resolution of the smoking matter.

Mr. Eidmann immediately informed Mr. Gouryeb of Mr. Levin's statements and recommended dismissal. Mr. Eidmann delivered a termination letter to Mr. Levin on August 23, 1988. Mr. Levin filed a complaint with the Office of Special Counsel (OSC). The FmHA rescinded Levin's termination on September 28, 1988. In October 1988, Mr. Gouryeb left the FmHA and took a position in the private sector. Because he is no longer a Government employee, Mr. Gouryeb is not subject to this action.

On November 15, 1988, a representative of the OSC interviewed Mr. Eidmann. On January 19, 1990, the OSC filed a complaint for disciplinary action against Mr. Eidmann. The complaint charged Eidmann with violating 5 U.S.C. § 2302(b)(8). The Board's chief administrative law judge applied section 2302(b)(8) of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, § 101, 92 Stat. 1111, 1114–16 (codified at 5 U.S.C. § 2302(b)(8) (1988), prior to the 1989 amendment). The chief administrative law judge found that Mr. Eidmann retaliated against Mr. Levin for protected whistleblowing. The chief administrative law judge demoted Mr. Eidmann two grades for two years. The Board adopted this decision. The Board, however, applied section 2302(b)(8) of the WPA, not the CSRA.

## DISCUSSION

### I.

Title 5 sets forth this court's standard for reviewing Board decisions. This court upholds a Board decision unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without [following] procedures required by law, rule, or regulation ... or unsupported by substantial evidence...." 5 U.S.C. § 7703(c) (1988).

This court must first consider whether the Board correctly applied the WPA, rather than the CSRA. Congress originally enacted 5 U.S.C. § 2302(b)(8) in 1978 as part of the CSRA. In enacting the WPA in 1989, Congress amended various sections of the CSRA, including § 2302(b)(8). Although beginning its investigation of Mr. Eidmann in 1988, OSC brought no complaint against him until 1990. This court must therefore determine whether the WPA or the CSRA version of section 2302 governs this case.

The WPA contains a provision stating when it applies:

No provision of this Act ... shall affect any administrative proceeding pending at the time such provisions take effect. Orders shall be issued in such proceedings, and appeals shall be taken

therefrom, as if this Act had not been enacted.

5 U.S.C. § 1201 note (Supp. II 1990) (Savings Provision). Therefore, the CSRA version of section 2302 governs "any administrative proceeding pending" on July 9, 1989—the effective date of the WPA.

This savings provision of the WPA is virtually identical to the prior CSRA savings provision. *See* 5 U.S.C. § 1101 note (1988) (Savings Provision). This court interpreted the CSRA provision to mean that an administrative proceeding originates when the employee receives notice of the proposed action:

> [I]t is clear ... that the notice of personnel action was an "administrative proceeding pending" on the effective date of the CSRA within the meaning of the Savings Provision.

*Wilson v. Turnage,* 791 F.2d 151, 156 (Fed. Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

■ Incorporation of the CSRA savings provision into the WPA in 1989 did not change the meaning of this statutory language. This court confirms that the words "administrative proceeding pending" mean that the employee has received notice of a proposed personnel action. Until receipt of that notice, no administrative proceeding pends.

This reading of the savings provision is fully consistent with the Board's regulations interpreting the WPA. This court accords deference to the statutory interpretation of an agency charged with administration of a law. *Wilson,* 791 F.2d at 155–56 (citing *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). The Board's regulation states:

> No provision of the Whistleblower Protection Act of 1989 shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing agency proceedings, including personnel actions that were proposed, threatened, or taken before July 9, 1989, the effective date of the Whistleblower Protection Act of 1989, and appeals before the

Board or its predecessor agencies that were subject to judicial review on that date. An agency proceeding is considered to exist once the employee has received notice of the proposed action.

5 C.F.R. § 1201.191(b)(2) (1992). This regulation states that a proceeding is "pending" if it "exists." The regulation further states that a proceeding exists at the time an employee receives notice of the proposed action.

OSC's November 15, 1988 interview with Mr. Eidmann did not serve as "notice of the proposed action" under 5 C.F.R. § 1201.-191(b)(2). The interview only notified Mr. Eidmann of an investigation. The investigation may have determined that OSC would not take any personnel action. The interview was also not a "threatened" personnel action referred to in 5 C.F.R. § 1201.191(b)(2). An investigatory interview does not show that the OSC had "proposed" or "threatened" to seek disciplinary action from the Board. While Mr. Eidmann subjectively felt threatened, the interview was part of a preliminary investigation, not an action initiating an administrative proceeding. The WPA savings provision requires pendency of an "administrative proceeding" on the WPA effective date. 5 U.S.C. § 1201 note. Until the OSC filed its complaint on January 19, 1990, which supplied Mr. Eidmann with notice, *see* 5 U.S.C. § 1215(a)(1) (Supp. II 1990), no disciplinary action was pending.

OSC filed its complaint and gave Mr. Eidmann notice of its action on January 19, 1990. Because Mr. Eidmann received notice of the proposed action after July 9, 1989, the Board correctly determined that the WPA governed this action. No administrative proceeding against Mr. Eidmann was pending before the OSC filed its complaint and notified Mr. Eidmann.

## II.

This court must next consider the proper standard of causation for disciplinary actions under WPA. Section 2302 of title 5 prohibits employees in authority from taking or threatening personnel actions

against other employees "because of" protected whistleblowing. 5 U.S.C. § 2302(b)(8).

Title 5 authorizes the OSC to take two separate actions when reprisals against whistleblowers occur. Under 5 U.S.C. § 1214 (Supp. II 1990), the OSC may seek from the Board appropriate corrective action to prevent the reprisal from causing the whistleblower any detriment. Under 5 U.S.C. § 1215, the OSC may seek from the Board disciplinary action, including removal or grade reduction, against employees who commit reprisals.

Under section 1214, the corrective action section, the Board may restore benefits if "Special Counsel has demonstrated that a disclosure described under section 2302(b)(8) was a contributing factor in the [prohibited] personnel action...." 5 U.S.C. § 1214(b)(4)(B)(i). The Board, however, may not order corrective action if the agency shows by "clear and convincing evidence that it would have taken the same personnel action in the absence of [whistleblowing]." 5 U.S.C. § 1214(b)(4)(B)(ii); *see also* 5 U.S.C. § 1221(e)(1)–(2) (Supp. II 1990) (providing for same standard in individual right of action cases brought by employee rather than OSC).

For section 1215, the disciplinary action section, the WPA gives no standard of causation similar to the "contributing factor" standard of section 1214. In the absence of any statutory language, this court must determine the proper causal standard for disciplinary actions as severe as removal or debarment from federal service.

The CSRA, WPA's predecessor, lacked a standard of causation for both corrective and disciplinary whistleblower actions. The Board developed a "significant factor" standard for both disciplinary and corrective action cases brought under the CSRA. *Special Counsel v. Brown,* 28 M.S.P.R. 133, 137 (1985) (disciplinary actions); *In re Frazier,* 1 M.S.P.B. 159, 188, 1 M.S.P.R. 163, 196 (1979) (corrective actions), *aff'd, Frazier v. Merit Sys. Protection Bd.,* 672

F.2d 150 (D.C.Cir.1982). This standard required the OSC to show that the protected conduct was a "significant factor" in the prohibited personnel action.

■ With comment about the higher quantum of proof required by the "significant factor" causal standard in the Senate Report, *see,* S.Rep. No. 413, 100th Cong., 2d Sess. 13 (1988), Congress enacted the "contributing factor" standard for corrective actions in section 1214. In the neighboring section 1215 for disciplinary actions, however, Congress declined to change the Board's causal standard.* Indeed Congress's amendment to section 1214 highlights its decision to provide no different causal standard for section 1215. Thus, this court determines that disciplinary actions under section 1215 continue to require that the whistleblowing activity be a "significant factor" in the reprisal action.

The overall context of the WPA shows that Congress deliberately distinguished section 1214 from section 1215 actions. The hallmark of this distinction is the lower causal standard for corrective actions than for disciplinary actions, but the WPA memorializes that distinction in other ways as well. Because a disciplinary action is punitive in contrast to the remedial and restorative character of a corrective action, section 1215 provides procedural protections for accused reprisers. Section 1215 provides, for example, a reasonable time to respond to the complaint, entitlement to an attorney, a hearing before the Board, or an administrative law judge, a transcript of the hearing, and a written decision. 5 U.S.C. § 1215(a)(2)(A)–(E).

■ In declining to alter the causal standard of section 1215, Congress apparently recognized the practical difficulties of supervisors "who are forced to make scores of personnel decisions which may peripherally or incidentally involve situations where employees have engaged in protected practice." *Starrett v. Special Counsel,* 792 F.2d 1246, 1253 n. 12 (4th Cir.1986). Con-

---

* Congress's decision to leave undisturbed the causal standard for section 1215 disciplinary actions is even more evident in light of Con-

gress's decision to provide a "contributing factor" standard for Individual Right of Action appeals, 5 U.S.C. § 1221 (Sup. II 1990).

gress did not enact a lenient causal standard which could force supervisors to bet their careers whenever recommending a personnel action tangentially related to protected conduct.

The Board erred by applying the "contributing factor" causal standard not found in section 1215 to discipline Mr. Eidmann. *Eidmann,* 49 M.S.P.R. at 625. As noted, section 1215 does not authorize use of the "contributing factor" standard to determine whether an employee is subject to disciplinary action for taking a personnel action because of whistleblowing.

### III.

Next this court must consider whether the Board erred by not requiring the OSC to prove that Mr. Eidmann knew that the WPA protected Mr. Levin's disclosures. The Board did not require proof that Mr. Eidmann had actual knowledge of the protection for Mr. Levin's disclosures.

■ In *Harvey v. Merit Sys. Protection Bd.,* 802 F.2d 537, 547 (D.C.Cir.1986), the District of Columbia Circuit suggested that the CSRA required the OSC to prove that the retaliating official actually or constructively knew that section 2302 protected the subordinate employee's activity. *See also In re Frazier,* 1 M.S.P.B. 159, 179, 1 M.S.P.R. 163, 186 (1979) ("to establish retaliation, it must be shown that the official accused of taking the retaliatory action against the whistleblower had knowledge that the protected disclosure has been made and by whom.") *aff'd, Frazier v. Merit Sys. Protection Bd.* 672 F.2d 150 (D.C.Cir.1982). As a CSRA case, *Harvey* does not bind this court's consideration of the WPA. Section 2302(b)(8) says nothing about the state of mind of the retaliating official. The law simply does not require proof that the retaliating official knew or should have known that the WPA protected the whistleblower's disclosures. The WPA does require an inquiry to determine whether the whistleblower "reasonably believes" the disclosure reveals a legal violation, gross mismanagement, or a safety hazard. 5 U.S.C. § 2302(b)(8). The Act does not require any inquiry into the retal-

iator's knowledge or beliefs about the protections due to the whistleblower. *See also* S.Rep. 413, 100th Cong., 2d Sess. 15 (1988) (criticizing *Harvey* requirement of proof of official's state of mind).

■ As discussed above, section 1215 permits imposition of disciplinary sanctions on employees who violate section 2302(b)(8) under a "significant factor" causal standard. In order for a protected disclosure to become a "significant factor" in a supervisor's decision to take a prohibited personnel action, the supervisor would need some knowledge of the disclosure. The WPA does not require, however, that the supervisor know that the disclosure was protected.

The language of the WPA clarifies that the Board did not err in finding a prohibited personnel practice without evidence that Mr. Eidmann had knowledge that the WPA protected Mr. Levin's disclosures. The WPA does not require proof of such knowledge to show a prohibited personnel practice.

### IV.

■ This court next examines the Board's application of the WPA. Section 2302(b) of title 5 sets forth the prohibited personnel practice of whistleblower reprisal:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> . . . .
>
> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—
>
> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
>
> (i) a violation of any law, rule, or regulation, or
>
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs....

Thus, to establish a violation of 5 U.S.C. § 2302(b)(8), the OSC must prove: (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure.

▇ To satisfy the first element, OSC must prove that Mr. Eidmann had the authority to "take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(b). The Board found that Mr. Eidmann had the authority required by the statute. For instance, Mr. Eidmann was state director Gouryeb's chief advisor on personnel issues, including employee-management relations. *Eidmann,* 49 M.S.P.R. at 624. Substantial evidence supports the Board's conclusion that Mr. Eidmann possessed sufficient authority for responsibility under section 2302(b)(8).

▇ The second element under section 2302(b)(8) requires the OSC to prove that Mr. Levin made disclosures protected by the WPA. For protection under the WPA, whistleblowers must reasonably believe the disclosure reveals legal violations, gross mismanagement, or substantial and specific danger to public health or safety. The record supports the Board's finding that Mr. Levin reasonably believed his disclosures uncovered violations of both FmHA and General Services Administration (GSA) smoking regulations. *Eidmann,* 49 M.S.P.R. at 622–23. The text of the smoking regulations, which ban smoking in general office areas, *see,* 41 C.F.R. §§ 101–20.105–3 (1991), shows the reasonableness of Mr. Levin's belief. Thus, the WPA protected Mr. Levin's disclosures to Messrs. Eidmann, Pope, and Evans.

▇ The third element requires OSC to show that Mr. Eidmann used his authority to take, or fail to take, or threaten to take or fail to take, a personnel action against Mr. Levin. "Personnel action," includes "an action under chapter 75 of ... title [5] or other disciplinary or corrective action." 5 U.S.C. § 2302(a)(2)(A)(iii). The record shows that Mr. Eidmann recommended Mr. Levin's firing to Mr. Gouryeb. The record also shows that Mr. Eidmann helped Mr. Gouryeb draft Mr. Levin's termination letter. These actions satisfy the third element. As a probationary employee, Mr. Levin qualified for protection. Section 2302(b)(8) specifically protects even applicants for employment from whistleblower retaliation.

▇ The fourth element requires the OSC to prove that Mr. Eidmann acted to terminate Mr. Levin "because of" protected disclosures. 5 U.S.C. § 2302(b)(8). As discussed above, the OSC must show, by a preponderance of the evidence, that the protected disclosures were a "significant factor" in the personnel action Mr. Eidmann took against Mr. Levin. Although it applied the wrong causal standard, the Board found sufficient facts for this court to ascertain that Mr. Levin's whistleblowing was a significant factor in the termination decision.

The record shows, and the Board correctly found, that when Mr. Eidmann and Mr. Gouryeb drafted Mr. Levin's termination letter in early August, Mr. Eidmann knew of two protected disclosures—Mr. Levin's call to Mr. Eidmann on June 20, 1988, and Mr. Levin's contact with Mr. Evans on July 21, 1988. As the Board noted, a "short time ... elapsed between [Eidmann's] awareness of Mr. Levin's disclosures in June and July and his action of drafting the termination letter...." *Eidmann,* 49 M.S.P.R. at 626. Moreover the termination letter itself specifically listed as a cause of termination Mr. Levin's contact with "agency and non-agency officials outside [his] supervisory channels [which] raises concerns about the compelling importance

[he] attach[es] to personal, non-program matters." *Id.* The record supports the Board's finding that Mr. Eidmann acted against Mr. Levin because of protected whistleblowing. Moreover, the record shows that Mr. Levin's whistleblowing was a significant factor in the decision to terminate.

In sum, the record supplies substantial evidence to support the Board's findings that Mr. Eidmann's conduct fell within each of the elements for a violation of § 2302(b)(8). Although it applied the incorrect causal standard, the Board found sufficient facts to permit this court to affirm its judgment.

### V.

Finally this court must consider whether the Board's penalty was excessive. The Board affirmed the chief administrative law judge's decision to demote Mr. Eidmann two grades for two years.

Under 5 U.S.C. § 1215(a)(3) the Board "may impose disciplinary action" against an employee who has committed a prohibited personnel practice. This statute gives the Board discretion in imposing a penalty. *See* 5 U.S.C. § 1215(a)(3). This court "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors." *Mings v. Department of Justice,* 813 F.2d 384, 390 (Fed.Cir.1987) (citing *DeWitt v. Department of Navy,* 747 F.2d 1442, 1445 (Fed. Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985)).

In *Douglas v. Veterans Admin.,* 5 M.S.P.R. 280, 305–06 (1981), the Board set forth a list of twelve factors relevant to penalty determination. However, the Board need not specifically address each and every *Douglas* factor in assessing a penalty. *Nagel v. Department of Health & Human Servs.,* 707 F.2d 1384, 1386 (Fed. Cir.1983) ("neither statute nor regulation

*requires* an agency to demonstrate that it considered all mitigating factors").

In this case, the Board considered several relevant factors. For instance, the Board weighed Mr. Gouryeb's command influence over Mr. Eidmann as a mitigating factor. *Eidmann,* 49 M.S.P.R. at 627. The Board also noted that Mr. Eidmann's duties as a personnel officer required detailed knowledge of civil service laws and regulations. *Id.* at 627–628. The Board pointed out that Mr. Eidmann recommended Mr. Levin's termination despite endorsements of Mr. Levin's performance by his supervisors. *Id.* at 628. Finally, the Board considered the seriousness of reprisals against whistleblowers. *Id.* The Board concluded that the penalty was proper. *Id.*

The Board carefully considered the relevant factors for imposition of a penalty. The Board did not abuse its discretion by imposing the penalty. This court finds no cause to disturb the Board's discretionary decision.

### CONCLUSION

The Board correctly determined that the WPA applies to this case. The Board applied the wrong standard of causation, but found sufficient facts to permit this court to uphold its disciplinary action under the correct standard. The Board correctly found that 5 U.S.C. § 2302(b)(8) does not require the OSC to prove that the acting official had knowledge that a disclosure was protected. Substantial evidence supported the Board's finding that Mr. Eidmann violated 5 U.S.C. § 2302(b)(8). The Board did not abuse its discretion by imposing the penalty on Mr. Eidmann.

AFFIRMED.