Thomas B. FREDERICK, Petitioner,

v.

DEPARTMENT OF JUSTICE, Respondent.

No. 95–3194.

United States Court of Appeals, Federal Circuit.

Jan. 4, 1996.

Gail M. Dickenson, Law Offices of Gail M. Dickenson, P.C., Dallas, Texas, argued for petitioner.

Kathie A. Whipple, Commercial Litigation Branch, Department of Justice, Washington, DC, argued for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Kirk T. Manhardt, Assistant Director.

Before NEWMAN, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Thomas B. Frederick petitions for review of the December 7, 1994 final decision of the Merit Systems Protection Board, Docket No. DE0752920467–I–1, holding that he violated the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b) (1994), and sustaining the agency's 21–day suspension. Because the board's decision was not supported by substantial evidence and was not in accordance with law, we reverse.

## BACKGROUND

The Department of Justice, Immigration and Naturalization Service (the agency), employed Frederick as a Patrol Agent In Charge at the Sonoita, Arizona Border Patrol Station from December 1988 to January 1994. Frederick supervised Border Patrol Agents, including Esker Mayberry. He also supervised Kenneth Womack, a trainee who entered on duty at Sonoita after completing academy training at the federal law enforcement training center in Glynco, Georgia.

After completing academy training, trainees at the Station received field training from Border Patrol Agents who were required to complete Conduct and Efficiency (C & E) evaluations for each trainee. The C & E evaluations were recorded on a standard two-page form containing various categories that the evaluator used to rate the trainee. The evaluator also had to make a recommendation either for or against retention of the trainee. Each trainee typically received several C & E evaluations over the course of the field training. After a trainee had passed a required Spanish exam, a Probationary Review Board made a recommendation for retention or non-retention based on the trainee's C & E evaluations and grades on a law exam and Spanish exam. The Probationary

Review Board's recommendation was forwarded to the Sector office and then to the Region office, which made the final decision of retention or non-retention.

Following a field training session, Mayberry completed an unfavorable C & E evaluation of Womack on October 27, 1989. Immediately thereafter, Womack reported to Frederick incidents that occurred during his field training session with Mayberry. Those incidents consisted of: (1) throwing stones at a railroad car that contained illegal aliens, which Womack alleged was a human rights violation; (2) performing a license plate check, which he alleged was unethical; and (3) crossing over the border between the United States and Mexico while on duty, which he alleged was a violation of international law.

Frederick discussed these incidents individually with Womack and Mayberry. He determined that the incidents were not violations of law and that Womack had made the allegations in order to divert attention from Mayberry's unfavorable C & E evaluation. As the Patrol Agent In Charge, Frederick was required to complete his own C & E evaluation of Womack by October 31, 1989, which was the date on which Womack was scheduled to take the required Spanish exam. When discussing the incidents with Womack, Frederick urged him to take the Spanish exam regardless of any concerns Womack had regarding the C & E evaluation that Frederick had not yet completed. Frederick also sought guidance from his superiors on how to handle Womack's disclosure, but received none. Frederick completed his C & E evaluation on the evening of October 30, 1989, and recommended against retention of Womack. Womack voluntarily resigned on October 31, 1989.

Eventually, Womack complained to the Office of Special Counsel (OSC). The OSC determined that Frederick retaliated against Womack because of protected disclosures and recommended that the agency take disciplinary action against Frederick. The agency suspended him for twenty-one days.

Frederick appealed to the Merit Systems Protection Board. In an initial decision, the administrative judge (AJ) found that Wom-ack could not have reasonably believed that the license plate check was unlawful. The AJ based his finding on Mayberry's testimony, in which he stated that he explained to Womack that the license plate check was necessary because the occupants of the house where the vehicle was parked were suspected of drug dealing, and the agents had not previously observed the vehicle at that house. The AJ similarly found that Womack could not have reasonably believed that the rock-throwing incident was unlawful because the rocks were thrown at the side of the railroad car to gain the attention of the aliens observed to have been inside. The AJ further found that the railroad car had no openings on the side at which the rocks were thrown, and the aliens were in no danger of being hit by the rocks.

The AJ found, however, that Womack's allegation of a border crossing was a protected disclosure. The AJ also found that the protected disclosure was the "sole reason" for Frederick's recommendation that Womack not be retained, and the AJ thus held that Frederick violated the WPA. Because Frederick did not know that he was violating the law and did not act with malicious motivation, the AJ held that there was only a technical violation and that a letter of warning was the maximum reasonable penalty for the violation.

The agency petitioned for review by the full board and Frederick cross-petitioned. The board affirmed the AJ's holding that Frederick violated the WPA; however, the board vacated the mitigation of the penalty and reinstated the agency's twenty-one day suspension. Frederick petitions for review by this court.

## DISCUSSION

██ We may reverse the decision of the board only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; procedurally deficient; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1037 (1987). Interpretation of a statute is a ques-

tion of law that we review *de novo*. *Marano v. Department of Justice*, 2 F.3d 1137, 1141 (Fed.Cir.1993).

On appeal, Frederick argues that several requirements for a violation of the WPA have not been met. In particular, he argues that Womack did not make a protected disclosure because there was no substantial evidence to support a reasonable belief by Womack that the border crossing, which is the subject of the only alleged protected disclosure on appeal, was a violation of law. He also asserts that his action in completing the C & E evaluation was not a "personnel action" within the meaning of the WPA. Even if it were a personnel action, he argues that he only made a recommendation and did not *take* a personnel action as is required for liability to attach under the WPA.

The agency argues that the board did not err in its decision. It asserts that Womack's report of the border crossing was a protected disclosure because he had a reasonable belief that a violation of law occurred. Frederick's unfavorable C & E evaluation, the agency argues, was a personnel action because it fell within two of the relevant statutory categories. Finally, the agency argues that Frederick took a personnel action against Womack through his completion of the unfavorable C & E evaluation.

The WPA provides that:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

. . .

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation. . . .

5 U.S.C. § 2302(b) (1994). We have interpreted the WPA to require proof of four elements to establish a violation of section 2302(b)(8): "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure." *Eidmann v. Merit Sys. Protection Bd.*, 976 F.2d 1400, 1407 (Fed.Cir.1992).

 We cannot agree that Frederick violated the WPA. The WPA specifically requires that the employee have a *reasonable belief* that he or she is disclosing a violation of law, rule, or regulation. 5 U.S.C. § 2302(b)(8)(A) (1994); *Horton v. Department of Navy*, 66 F.3d 279, 283 (Fed.Cir. 1995). The factual findings for such a reasonable belief must be supported by substantial evidence. *See* 5 U.S.C. § 7703(c)(3) (1994). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *see also Jacobs v. Department of Justice*, 35 F.3d 1543, 1546 (Fed.Cir.1994). Consideration of contradictory evidence in the record is required, since "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

 We agree with Frederick that there was no substantial evidence to support a reasonable belief by Womack that a violation occurred. The alleged border crossing occurred when Womack and Mayberry were "cutting sign," which involved inspecting for tracks, such as tire tracks or footprints, indicative of illegal entry into the United States. During this activity, Mayberry and Womack crossed over a fence between the United States and Mexico in order to evaluate "sign." Mayberry testified that he did not know if in the process of jumping the fence they crossed into Mexico because the fence was not exactly on the border and in most situations is on the United States' side; the exact location of the border is determined

by monuments. Mayberry also testified that he did not believe that he went far enough beyond the fence to enter Mexico. At the time, Mayberry had almost four years of service and had never been the subject of an adverse action.

■ The WPA was enacted to protect employees who report genuine infractions of law, not to encourage employees to report arguably minor and inadvertent miscues occurring in the conscientious carrying out of one's assigned duties. As noted in the legislative history of the WPA:

> What is needed is a means to protect the Pentagon employee who discloses billions of dollars in cost overruns, the GSA employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants.... Nor would the bill protect employees who claim to be whistle blowers in order to avoid adverse action based on inadequate performance.

S.REP. No. 95–969, 95th Cong., 2d Sess. 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2730–31. The WPA was thus not intended to encompass such a minor transgression as took place even if Mayberry and Womack stepped into Mexico while doing their work. If supervisors have to fear that every trivial lapse in their own behavior will be the subject of a whistleblowing complaint when they critically appraise their employees, as they are obligated to do, they will be deterred from carrying out honest appraisals. Poor performers will be protected by any minor lapse in a supervisor's conduct. This was not the purpose of the WPA, which was intended to root out real wrongdoing. Thus, the alleged action by Mayberry was of such a trivial nature that Womack could not have had a reasonable belief that Mayberry was violating a law, rule, or regulation within the meaning of the WPA.

Considering all the evidence presented, including that which detracts from a "reasonable belief," the record does not contain substantial evidence to support a reasonable belief by Womack that the border crossing was a violation of law. Thus, no reasonable fact-finder could conclude that Womack's disclosure of the alleged border crossing was a protected disclosure.

■ In addition, Frederick's act of completing the C & E evaluation was not a "personnel action." The WPA defines "personnel action" as:

(i) an appointment;

(ii) a promotion;

(iii) an action under chapter 75 of this title or other disciplinary or corrective action;

(iv) a detail, transfer, or reassignment;

(v) a reinstatement;

(vi) a restoration;

(vii) a reemployment;

(viii) a performance evaluation under chapter 43 of this title;

(ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;

(x) a decision to order psychiatric testing or examination; and

(xi) any other significant change in duties, responsibilities, or working conditions[.]

5 U.S.C. § 2302(a)(2)(A) (1994). The agency conceded that the C & E evaluation was not a "performance evaluation under chapter 43." *See id.* § 2302(a)(2)(A)(viii). Instead, the agency first argues that the C & E evaluation was an appointment under subsection (i). *See id.* § 2302(a)(2)(A)(i). However, Womack had already received an appointment, and Frederick did not have authority to appoint or transfer border patrol agents. Without such authority, Frederick's C & E evaluation could not have been an appointment. Moreover, the C & E evaluation only recommended against retention; it did not effectuate any such action and had no binding effect on the agency.

The agency also argues that Frederick's C & E evaluation was an action under subsection (iii). *See id.* § 2302(a)(2)(A)(iii). Subsection (iii), which references chapter 75, relates to disciplinary actions such as removal, short suspensions, and reduction in grade or pay. *See id.* § 7512. The C & E evaluation

could not have been such a disciplinary or corrective action, because it was a recommendation and did not effectuate any such action. Ronald Dowdy, Chief Patrol Agent of the Tucson Sector, testified that he did not believe that Frederick's C & E evaluation would have resulted in Womack's removal. Womack received approximately ten C & E evaluations, and Dowdy further testified that it was the composite of such evaluations which were to be considered by the agency and that "a single recommendation based on a single incident based on my experiences, unless it is a quite different incident than this one, would not be sufficient cause for the panel and regional office to not retain an individual." Sally Tuttle, Tucson Sector Training Officer, testified that if Womack had taken the Spanish exam he would have been approved by the ten-month Probationary Review Board. Thus, there was no substantial evidence in the record to support the notion that Frederick's C & E evaluation would have resulted in disciplinary or corrective action for Womack had he chosen to remain in service. Accordingly, Frederick's C & E evaluation did not fall within subsection (iii). *See id.* § 2302(a)(2)(A)(iii).

The WPA specifically distinguishes between those who *recommend* personnel actions and those who *take or fail to take* personnel actions. *Id.* § 2302(b)–(b)(8). In terms of being within the scope of the WPA, the act applies to those who have authority to *recommend* a personnel action. *Id.* § 2302(b). However, the WPA under section 2302(b)(8) only attaches liability to those who *take or fail to take* a personnel action. *See Eidmann,* 976 F.2d at 1407. Supervisors such as Frederick are fully encouraged to make honest recommendations concerning employees, but they must be more careful of actions they take (or fail to take) concerning employees.

Frederick did not take or fail to take a personnel action against Womack. On the contrary, his C & E evaluation was merely a recommendation to the agency. It is only when one takes or fails to take a personnel action against an employee because of a protected disclosure that liability attaches under the relevant section of the WPA, and no such action occurred here. The board's holding that Frederick took a personnel action and that the third element of the *Eidmann* test was met, *see id.* at 1407, was thus not in accordance with law because it resulted from an erroneous interpretation of the WPA.

## CONCLUSION

The decision of the Merit Systems Protection Board is reversed because it was not supported by substantial evidence and was not in accordance with law; it misconstrued the meaning and scope of the WPA. Frederick is entitled to back pay to compensate for the twenty-one day suspension, and we remand to the board for a determination of such back pay.

*REVERSED AND REMANDED.*