Benedict J. FERRO and F. Gerard Heinauer, Petitioners,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent,

and

Office of the Special Counsel, Intervenor.

No. 99–3258.

United States Court of Appeals, Federal Circuit.

March 14, 2001.

Before BRYSON, Circuit Judge, SMITH * and PLAGER,** Senior Circuit Judges.

PLAGER, Senior Circuit Judge.

This case arises from a complaint for disciplinary action filed with the Merit Systems Protection Board (Board) pursuant to 5 U.S.C. § 1215 (1994) in April 1994 by the Office of Special Counsel (OSC). The complaint alleged that Benedict J. Ferro and F. Gerard Heinauer, then Director and Deputy Director, respectively, of the Rome, Italy District office of the U.S. Immigration and Naturalization Service (INS), took prohibited personnel actions against Elaine Aikens in violation of the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b)(8) (1994). A hearing was held before the Board's Chief Administrative Law Judge (CALJ) in November and December 1994. The CALJ found that Ms. Aikens had made several disclosures protected by the WPA, and that, as a result of those disclosures, Mr. Ferro and Mr. Heinauer had taken personnel actions prohibited by the WPA. *Special Counsel v. Ferro*, Nos. CB–1215–94–0027–T–1 & CB–1215–94–0028–T–1 (M.S.P.B. Dec. 2, 1997). The CALJ determined that the appropriate penalty for both Mr. Ferro and Mr. Heinauer was a one-grade demotion for a minimum of one year, and he ordered the

---

* Senior Circuit Judge Smith heard oral argument but, due to illness, did not participate in the decision. This case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11.

** Judge Plager assumed senior status on November 30, 2000.

INS to effect the demotions accordingly. The CALJ's initial decision became the final decision of the Board on April 5, 1999 when the Board denied the petition for review. We *affirm-in-part, reverse-in-part, and remand* to the Board for reconsideration of the penalty in light of our decision.

## BACKGROUND

In 1991, Ms. Aikens began a three-year tour of duty as the Administrative Officer in the Rome INS office. The CALJ found that, during her time in Rome, Ms. Aikens made three sets of disclosures that were protected under the WPA. First, in August 1991, Ms. Aikens met with INS officials in Washington, D.C. and reported what she believed were violations of federal regulations pertaining to the unauthorized use of government vehicles, improper use of overtime, and the use of contract employees at the INS office in Rome. Second, during a November 1992 EEO seminar at the U.S. Embassy in Rome, Ms. Aikens reported that she had been sexually harassed several years earlier. Finally, in December 1992, Ms. Aikens disclosed to Mr. Heinauer her concerns that Mr. Ferro was misusing his government vehicle because the vehicle had excessive mileage and Mr. Ferro had purchased apparently unnecessary snow chains.

The CALJ also found that Ms. Aikens's protected disclosures motivated Mr. Ferro and Mr. Heinauer to take three prohibited personnel actions. First, in late 1992 and 1993, Mr. Heinauer pressured Ms. Aikens to voluntarily rotate out of the Rome office, and Mr. Ferro requested the INS International Affairs Office to terminate Ms. Aikens's tour of duty in Rome and rotate her back to the United States. Second, in January 1993, Mr. Ferro removed Ms. Aikens from her usual duties and detailed her to the Information Unit. Finally,

in her January 1993 annual performance appraisal, Mr. Heinauer made some negative comments regarding Ms. Aikens's performance, although he gave her an overall rating of "excellent." The CALJ found that Mr. Ferro and Mr. Heinauer had knowledge of Ms. Aikens's protected disclosures when they took each of the three personnel actions and that the disclosures were a significant factor in the decisions to take the personnel actions. *See Eidmann v. Merit Sys. Protection Bd.,* 976 F.2d 1400, 1405 (Fed.Cir.1992) (holding that to establish liability in a disciplinary action under § 1215, the whistleblowing activity must be a significant factor in the decision to take a prohibited personnel action).

## DISCUSSION

We must affirm the decision of the Board unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703 (1994).

On appeal, Petitioners argue that the November 1992 EEO disclosures and the December 1992 vehicle-related disclosures were not protected by the WPA. Petitioners further contend that the rotation of Ms. Aikens back to the United States and Mr. Heinauer's appraisal of Ms. Aikens's annual performance were not personnel actions within the meaning of 5 U.S.C. § 2302(a)(2)(A). Petitioners concede that Ms. Aikens's August 1991 disclosures were protected by the WPA and that her reassignment to the Information Unit was a personnel action. Petitioners contend, however, that the August 1991 disclosures could not have been a significant factor in the decision to reassign Ms. Aikens because they lacked knowledge of the disclo-

sures until May 1993, after the reassignment.

We agree in part with Mr. Ferro and Mr. Heinauer. Regarding Ms. Aikens's disclosure at the November 1992 EEO seminar, we fail to see how allegations of past sexual harassment made to a group during a general discussion can be considered protected under the WPA when Ms. Aikens did not identify the individuals who allegedly harassed her and took no further actions to have the allegations brought before an appropriate authority. *See Keefer v. Dep't of Agric.*, 82 M.S.P.R. 687, 692 (1999) (noting that protected disclosures must be specific and detailed). We agree with the Board, however, that Ms. Aikens's disclosure in December 1992 to Mr. Heinauer alleging Mr. Ferro's misuse of his government vehicle was protected under the WPA. A disclosure may be protected if the employee reasonably believes that the information disclosed evidences a violation of any law, rule, or regulation. 5 U.S.C. § 2302(b)(8)(A)(i). The test is not whether there was in fact a violation, but whether a disinterested observer could reasonably conclude that a violation occurred. *See Lachance v. White*, 174 F.3d 1378, 1381 (Fed.Cir.1999); *Horton v. Dep't of the Navy*, 66 F.3d 279, 283 (1995). Although it was ultimately determined that Ms. Aikens misread the mileage on Mr. Ferro's government vehicle, substantial evidence supports the CALJ's finding that, at the time she made the disclosure, Ms. Aikens reasonably believed that the excessive mileage she observed and Mr. Ferro's purchase of snow chains evidenced misuse of the vehicle.

Regarding the personnel actions taken by Mr. Ferro and Mr. Heinauer, neither the request for Ms. Aikens's rotation back to the United States nor Ms. Aikens's performance appraisal was a personnel action prohibited by the WPA. Because Mr. Ferro and Mr. Heinauer only recommended that the INS terminate Ms. Aikens's tour of duty in Rome, and because they did not have the authority to effect that termination, their actions are not covered by the WPA. *See* 5 U.S.C. § 2302(b)(8); *Frederick v. Dep't of Justice*, 73 F.3d 349, 354 (Fed.Cir.1996) (though the WPA applies to those who have authority to recommend a personnel action, liability attaches only to those who take or fail to take a personnel action). Also, while a performance appraisal may be a personnel practice for purposes of the WPA, *see* 5 U.S.C. § 2302(a)(2)(A)(viii), we fail to see how an appraisal rating an employee's performance as "excellent" is prohibited by the WPA.

Thus, our review of the record and the applicable law causes us to affirm the Board's findings with respect to two sets of protected disclosures–the August 1991 disclosures and the December 1992 disclosure regarding Mr. Ferro's use of a government vehicle–and one personnel action–Ms. Aikens's reassignment to the Information Unit in January 1993. Petitioners clearly had knowledge of the December 1992 disclosure made directly to Mr. Heinauer. The question remains whether Mr. Ferro and Mr. Heinauer had knowledge of the August 1991 disclosures when they made the decision to reassign Ms. Aikens. *See Eidmann*, 976 F.2d at 1406. Petitioners claim that they had no knowledge of the August 1991 disclosures until May 1993, after the reassignment. The only evidence of prior knowledge is Ms. Aikens's uncorroborated testimony that she told Mr. Heinauer in June 1992 that she was the person who had told INS officials about the allegedly unauthorized use of government vehicles in the Rome office. The CALJ found that Petitioners did know about the August 1991 disclosures when they decided to reassign Ms.

Aikens, primarily because the CALJ found Ms. Aikens's testimony more credible than that of Petitioners. Furthermore, the CALJ did not find credible Petitioners' unsupported testimony that the reassignment was made based on concerns about security and other matters rather than in reprisal for protected disclosures. Under our standard of review, we can reverse the Board's factual findings only if they are unsupported by substantial evidence. Additionally, credibility determinations by the Board are "virtually unreviewable" on appeal. *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed.Cir.1998). Given these considerations, we are not prepared to overturn the Board's decision that Ms. Aikens's August 1991 and December 1992 disclosures were a significant factor in Petitioners' decision to reassign Ms. Aikens to the Information Unit.

Thus, we uphold the Board's findings with respect to two sets of disclosures and one personnel action and a nexus between them sufficient to establish liability. Because the Board made its penalty determination based on its belief that Petitioners engaged in three prohibited personnel practices as a result of three protected disclosures, we remand for further proceedings for the Board to reassess Petitioners' penalty in light of this decision.