NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARCUS LEWIS,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2014-3148

---

Petition for review of the Merit Systems Protection Board in No. CB-1216-13-0063-T-1.

---

Decided: December 4, 2014

---

MARCUS LEWIS, of Matteson, Illinois, pro se.

STEPHEN FUNG, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief was BRYAN G. POLISUK, General Counsel.

---

Before NEWMAN, BRYSON, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Marcus Lewis appeals a decision of the Merit Systems Protection Board ("Board") removing him from his position with the United States Postal Service ("USPS") for violating the Hatch Act, 5 U.S.C. § 7323(a). *Special Counsel v. Lewis*, 121 M.S.P.R. 109 (2014) (*"Board Decision"*). Because the Board did not err in reaching its conclusion, we *affirm*.

## I. BACKGROUND

Mr. Lewis began working for the USPS in October 1997, in Carol Stream, Illinois. *Board Decision*, 121 M.S.P.R. at 111. In 2012, Mr. Lewis became involved in the Illinois congressional elections, running as an independent candidate for Illinois' second congressional district seat—first in the general election held in November 2012, and then in the special election held in April 2013.[1] *Id.* at 112. Mr. Lewis' political activities garnered the attention of the Office of Special Counsel ("OSC"). As part of its official duties, OSC investigates potential violations of the Hatch Act, which prohibits most federal employees in the executive branch from running as candidates for a partisan political office.

Beginning in September 2012, OSC repeatedly warned Mr. Lewis that his participation in a congressional race violated the Hatch Act. *Id.* OSC informed Mr. Lewis that he could either withdraw from the general campaign or resign from his position with the USPS. In addition to these warnings, Mr. Lewis also received a mandatory service talk about the Hatch Act at work on November 2, 2012, which outlined the permissible and

---

[1] Mr. Jesse Jackson Jr. was elected to this seat in the 2012 general election, but resigned on November 21, 2012. A special election was held in April 2013 to find his replacement.

prohibited activities under the Act. Mr. Lewis did not exit the race, however. When it was announced that a special election would be held in April 2013 for the same congressional seat, Mr. Lewis publicly expressed his intention to again seek election to the United States House of Representatives.

Following Mr. Lewis' announcement on December 4, 2012, the USPS mailed Mr. Lewis a cease and desist letter, which reiterated that his candidacy would violate the Hatch Act and cautioned him that he could be subject to disciplinary action by OSC. *Id.* Despite this warning, Mr. Lewis filed the necessary paperwork to become an independent candidate in the 2013 special election. OSC advised Mr. Lewis that his candidacy violated the Hatch Act and recommended that he either withdraw from the election or resign from the USPS. Mr. Lewis did neither.

On March 13, 2013, OSC filed a complaint with the Clerk of the Board, alleging that Mr. Lewis violated the Hatch Act by running for partisan political office twice and by soliciting political contributions via his campaign website and Facebook page during his campaigns for elected office. Petitioner's Appendix at 1. After Mr. Lewis failed to file an answer within the prescribed period of time of 35 days, OSC moved for entry of default. *Id.* at 3. Prior to entering a default, however, the Administrative Law Judge ("ALJ") issued a show cause order, affording Mr. Lewis additional time to answer OSC's complaint and to explain why default should not be entered against him. *Id.* at 3–4. Mr. Lewis again failed to file a response.

In the absence of any response, the ALJ issued its initial decision, finding that Mr. Lewis had violated the Hatch Act and that the penalty for these violations should be removal from his job at the USPS. *Id.* at 17. Specifically, the ALJ treated OSC's unanswered allegations as admitted facts, deemed to be true, in light of Mr. Lewis' failure to respond. *Id.* at 5. Because the relevant Illinois

congressional races involved Republican and Democratic candidates, the ALJ found it was an election for a partisan political office prohibited by the Hatch Act. *Id.* at 9. Additionally, the ALJ concluded that Mr. Lewis knowingly solicited political contributions for his campaigns because he requested donations on his campaign website and Facebook page, and allowed visitors to contribute to his campaign via a PayPal link on his campaign website. *Id.* at 10–11. The penalties for Hatch Act violations include, *inter alia*, suspension, reprimand, and civil penalties. The ALJ, however, found the most appropriate punishment to be removal, because Mr. Lewis had continued to violate the Hatch Act, despite several warnings and opportunities to withdraw from the races. *Id.* at 16. The ALJ assessed several factors, known as the *Purnell* factors, to determine whether removal was an appropriate penalty for this Hatch Act violation.[2] *Id.* at 11–16.

Mr. Lewis then filed a petition for review, asking the Board to reverse the ALJ's decision. *Board Decision*, 121 M.S.P.R. at 114. He argued that his failure to respond to OSC's complaint should be excused due to his attorney's negligence. According to Mr. Lewis, the ALJ should not have entered default against him. With his petition, Mr. Lewis included an answer to OSC's complaint, admitting the "salient facts forming the basis of the [ALJ's] findings that he violated the Hatch Act." *Id.* Mr. Lewis claimed,

---

[2]    The *Purnell* factors consider: (1) the nature of the offense and the extent of the employee's participation; (2) the employee's motive and intent; (3) whether the employee received advice of counsel regarding the activities at issue; (4) whether the employee had Hatch Act knowledge; (5) whether the employee ceased the activity; (6) the employee's past employment record; and (7) the political coloring of the employee's activities. *Special Counsel v. Purnell*, 37 M.S.P.R. 184, 200 (1988).

however, that he did not violate the Hatch Act, because running for an elected office as an independent candidate is permissible under the Act, and that any violation of the Act was unknowing and unintentional.

The Board denied Mr. Lewis' petition to reverse the ALJ's decision. *Id.* To vacate the ALJ's entry of default, Mr. Lewis had to demonstrate good cause for his failure to respond. Because Mr. Lewis never designated anyone as his representative, the Board found that Mr. Lewis could not rely on his attorney's negligence to excuse his failure to respond to OSC's complaint. *Id.* at 115. The Board pointed out that Mr. Lewis himself was a registered e-filer. For both these reasons, the Board found that there was no good cause to vacate the ALJ's entry of default. *Id.* at 115–16. The Board concluded, moreover, that even if Mr. Lewis' untimely answer could be considered, Mr. Lewis admitted that he ran for political office and that his websites instructed the public to donate to his campaign, thereby conceding he had violated the Hatch Act. The Board explained that when an untimely answer will not change the outcome of a case, it will not address any argument that the answer should be considered. *Id.* at 116 (citing *Special Counsel v. Briggs*, 110 M.S.P.R. 1, 3 (2008)). Because Mr. Lewis "admitted to the pertinent facts which form the basis of the [ALJ's] findings that he violated the Hatch Act," the Board found there was no reason to vacate the entry of default. *Id.*

As for the underlying Hatch Act violations and punishment, the Board affirmed the ALJ's conclusions that Mr. Lewis violated the Hatch Act and that Mr. Lewis should be removed from his position because of those violations. *Id.* at 117, 124. The Board agreed with the ALJ's finding that, in light of the admitted facts, Mr. Lewis ran for a partisan political office twice and knowingly solicited political contributions via his campaign website and Facebook page in violation of the Hatch Act. *Id.* at 116–17.

The Board, however, found that the *Douglas* factors, and not the *Purnell* factors, should have been considered to determine Mr. Lewis' penalty.[3] *Id.* at 119. Under the recent amendments to the Hatch Act, a violation no longer results in an employee's removal from his position unless the Board unanimously finds that the violation warrants removal. Hatch Act Modernization Act of 2012, Pub. L. No. 112-230, § 4, 126 Stat. 1616. Instead, the amendment affords the Board great flexibility in crafting appropriate remedies for such violations, by making clear that an employee who violates the Act "shall be subject to removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, reprimand, or an assessment of a civil penalty not to exceed $1,000." *Board Decision*, 121 M.S.P.R. at 119

---

[3]    The *Douglas* factors consider: (1) the nature and seriousness of the offense, including whether the offense was intentional or inadvertent, or was frequently repeated; (2) the employee's job level and type of employment, including any fiduciary or supervisory role; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level; (6) the consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) the consistency of the penalty with any applicable table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated; (10) the potential for the employee's rehabilitation; (11) any mitigating circumstances surrounding the offense, such as unusual job tensions; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–06 (1981).

(quoting 5 U.S.C. § 7326). Because the *Purnell* factors had been adopted when there was a presumption of removal—which no longer exists—the Board concluded that, under the new version of the Act, it would be more appropriate to apply the *Douglas* factors, which are applied in other OSC disciplinary actions brought before the Board. *Id*. at 119–20.

Applying the *Douglas* factors, the Board still determined that Mr. Lewis should be removed from his position with the USPS. *Id*. at 120. In particular, the Board noted that Mr. Lewis repeatedly ignored the advice from OSC and the USPS that his actions were unlawful. Thus, "[t]he repeated, flagrant nature of [his] Hatch Act violations," in the absence of any mitigating factors, such as a positive employment record or a prompt withdrawal from the races, supported Mr. Lewis' removal. *Id*. at 122.

Mr. Lewis timely appealed the Board's decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

## II. DISCUSSION

Our jurisdiction to review a final decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Fields v. Dep't of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006).

Under the Hatch Act, a USPS employee may not "run for nomination or as a candidate for election to a partisan political office." 5 U.S.C. § 7323(a)(3); *see* 39 U.S.C. § 410(b)(1) (stating that Title 5, Chapter 73, which includes the Hatch Act provisions, applies to employees of the USPS); 5 C.F.R. § 734.101 (defining the term "employee" for the purposes of the political activities regula-

tions for federal employees to include "any individual . . . employed or holding office in . . . [t]he United States Postal Service or the Postal Rate Commission."). A partisan political office is defined as "any office for which any candidate is nominated or elected as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected . . . ." 5 U.S.C. § 7322(2). Furthermore, a USPS employee may not "knowingly solicit, accept, or receive a political contribution from any person." 5 U.S.C. § 7323(a)(2). If an employee violates the Hatch Act, the employee "shall be subject to removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, reprimand, or assessment of a civil penalty not to exceed $1,000." 5 U.S.C. § 7326.

On appeal, Mr. Lewis argues that the Board failed to assess crucial facts when making its determination. Specifically, Mr. Lewis contends that the Board did not consider that (1) no official complaint was filed against him with the OSC; (2) he believed his attorney would file an answer with the Board on his behalf; (3) he had no knowledge of the Hatch Act; and (4) he thought his conduct was permissible in light of an OSC statement. Petitioner's Br. at 3–10. Mr. Lewis asks the court to reconsider the facts, and completely vacate the Board's decision, or, at a minimum, reverse the Board's finding that he should be removed from his job.

As an initial matter, Mr. Lewis contests the validity of the proceedings against him. Petitioner's Br. at 5–6. In particular, Mr. Lewis argues that it was improper for OSC to initiate an action against him, because OSC did not receive a complaint alleging he violated the Hatch Act on an OSC official complaint form. Without this official complaint, Mr. Lewis contends OSC had no authority to investigate and prosecute him.

Mr. Lewis' argument is without merit. While it is true OSC provides a form for individuals to complete in order to alert OSC of potential prohibited political activity, this paperwork is not required. *See* 5 C.F.R. § 1800.1(d) (explaining that a complaint alleging a Hatch Act violation may be submitted in any written form). The absence of an official complaint did not prevent OSC from investigating Mr. Lewis' alleged Hatch Act violations.

## A. Good Cause

Mr. Lewis next contends that the Board should have excused his failure to answer OSC's complaint, because of his attorney's negligence. If his failure to respond were excused, Mr. Lewis argues that the Board would not have excluded his response and would have considered evidence presented in his untimely answer, including evidence that he had no knowledge of the Hatch Act. Mr. Lewis alleges that, if the Board had considered this information, it would have reached a different outcome in this case.

Mr. Lewis does not dispute that he failed to comply with the requirements of 5 C.F.R. § 1201.124(c), which states that an answer must be filed "with the Clerk of the Board within 35 days of the date of service of the complaint." Instead, Mr. Lewis complains that the Board erred when it failed to find he had demonstrated good cause for the delay in filing his answer.

"To establish good cause for a filing delay, [a party] must show that the delay was excusable under the circumstances and that the [party] exercised due diligence in attempting to meet the filing deadline." *Zamot v. Merit Sys. Prot. Bd.*, 332 F.3d 1374, 1377 (Fed. Cir. 2003). The Board's decision regarding a showing of good cause "is a matter committed to [its] discretion and this court will not substitute its own judgment for that of the Board." *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 653 (Fed. Cir. 1992). This court "will disturb [only] the grant or denial

of such a waiver [] if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.*

In its decision to uphold the ALJ's entry of default, the Board explained that "a party is bound by the actions or inactions of his chosen representative, which generally do not excuse the appellant's filing delay." *Board Decision*, 121 M.S.P.R. at 115 (citations omitted). Therefore, even if Mr. Lewis had properly designated his attorney as his representative, Mr. Lewis would have been bound by that counsel's inaction. While Mr. Lewis claims that the Board failed to properly consider his counsel's negligence in reaching its decision, it clearly did, but found that any such negligence would not excuse Mr. Lewis' failure to respond, particularly given Mr. Lewis' own status as an e-filer. The burden was on Mr. Lewis to show good cause for his failure to respond. We find no abuse of discretion in the Board's conclusion that Mr. Lewis failed to meet that burden.

## B. Hatch Act Violations

Mr. Lewis also argues that the Board failed to consider his contentions that he had no knowledge of the Hatch Act. If the Board had examined these facts, Mr. Lewis alleges, it would have concluded that he was innocent.

The Hatch Act prohibits an USPS employee from running for partisan political office. This prohibition does not require knowledge or intent, as Mr. Lewis suggests. Rather, the statute simply states that a USPS employee may not "run for nomination or as a candidate for election to a partisan political office." 5 U.S.C. § 7323(a)(3). Mr. Lewis is correct, though, that an individual must "*knowingly* solicit, accept or receive a political contribution from any person," in order to violate the restriction against political fundraising. 5 U.S.C. § 7323(a)(2) (emphasis added). While Mr. Lewis contends he cannot be guilty if he had no knowledge that the soliciting of donations

violated any law, the statutory knowledge requirement does not require such scienter. Rather, the statute simply states one must *knowingly solicit* a political contribution, which even in Mr. Lewis' untimely response, he admits. *See* Respondent's Appendix at 87 (Mr. Lewis, in his answer, admits that his campaign website asked for donations and provided a link to PayPal where individuals could donate to his campaign).

Here, the Board found it was undisputed that Mr. Lewis participated in two partisan elections and knowingly solicited political contributions during both campaigns via his campaign website and Facebook page. *Board Decision*, 121 M.S.P.R. at 115. Substantial evidence supports these conclusions. Therefore, we affirm the Board's determination that Mr. Lewis violated the Hatch Act.

### C. Penalty

Lastly, Mr. Lewis challenges the reasonableness of his penalty. Specifically, Mr. Lewis argues that the Board failed to consider his belief that his conduct was permissible in light of a newspaper article, wherein an OSC spokeswoman stated that an employee does not run afoul of the Hatch Act if the employee runs as an independent candidate. "[I]t is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency." *Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999) (quoting *Miguel v. Dep't of the Army*, 727 F.2d 1081, 1083 (Fed. Cir. 1984)). Therefore, "[t]his court 'will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors.'" *Eidmann v. Merit Sys. Prot. Bd.*, 976 F.2d 1401, 1408 (Fed. Cir. 1992) (quoting *Mings v. Dep't of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987)).

Contrary to Mr. Lewis' assertions, the Board considered Mr. Lewis' claim that he thought, even if mistakenly,

that he could run for political office as an independent. The Board explained that there are very narrow conditions that allow an employee who resides "in a municipality or political subdivision designated by [the Office of Personnel Management (OPM)] . . . [to] [r]un as independent candidate[] for election to partisan political office in elections for local office in the municipality or political subdivision." *Id.* at 122 n.3 (quoting 5 C.F.R. § 733.103(b)(1)). This limited exception, however, was inapplicable to Mr. Lewis, because he ran for "elected office on the federal level." *Id.* Additionally, even if Mr. Lewis initially believed his actions were permissible, the Board concluded that the multiple OSC notices made it clear to Mr. Lewis that he should not continue with his political activities. Therefore, the Board concluded that his alleged reliance on a newspaper article was not sufficient to mitigate his penalty.

Ultimately, while Mr. Lewis may disagree with the Board's determination, there is nothing in the record to suggest that we should overturn its decision. Here, the Board considered several factors to reach its decision. For example, the Board weighed OSC's and USPS's repeated attempts to warn Mr. Lewis that his candidacy violated the Hatch Act and Mr. Lewis' decision to remain a candidate in both congressional races after these warnings, against Mr. Lewis' alleged belief that his conduct was lawful. *Board Decision*, 121 M.S.P.R. at 121–23. The Board also explained that Mr. Lewis' penalty was commensurate with other penalties the Board had imposed under similar circumstances. *Id.* at 123. Lastly, the Board noted that Mr. Lewis' employment record, which included an extensive disciplinary history, did not mitigate the penalty. *Id.* at 123–24. Given Mr. Lewis' "unwavering resolve to run for partisan political office" in the face of repeated protestations by OSC and USPS, the Board concluded removal was appropriate. *Id.* at 124. In light of the Board's thorough consideration of the facts,

there is no reason to find the penalty unreasonable in this case.

## III. CONCLUSION

Accordingly, we affirm the decision of the Board.

**AFFIRMED**