101 F.3d 716
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Russell N. KELL, Petitioner,
v.
DEPARTMENT OF VETERANS AFFAIRS, Respondent.
 No. 96-3333.
 United States Court of Appeals, Federal Circuit.
 Nov. 14, 1996.
 
 Before RICH, CLEVENGER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 Petitioner, Russell N. Kell, seeks review of the Merit Systems Protection Board's (Board's) final decision, Docket No. SE1221950233-W-1, accepting the initial decision dated February 7, 1996. Because petitioner does not show reason to disturb this decision, this court affirms.
 
 
 2
 During 1991 and 1992, Mr. Kell served as the Veteran Services Officer (VSO) at the Department of Veterans Affair's Anchorage, Alaska, facility. [RA4]. Among Mr. Kell's duties was the supervision of Mr. Daniel Derry, the Education Liaison Representative. Under the education program, an agency of the State of Alaska, the State Approving Agency (SAA), contracted with the Department of Veterans Affairs to review and approve the participation of certain educational institutions in the veterans' educational program. [RA5]. Periodically, the SAA submitted vouchers to the Department of Veterans Affairs for review and approval for payment under the contract. [RA5].
 
 
 3
 During this period, Mr. Derry expressed concerns to Mr. Kell regarding, in general, SAA vouchers. [RA5-6]. Mr. Kell advised Mr. Derry that until an actual fraudulent voucher was filed, the problem could not be addressed. Subsequently, Mr. Derry brought a particular voucher to Mr. Kell's attention. Mr. Kell suggested that Mr. Derry obtain a copy of the applicable state regulations. Instead, Mr. Derry contacted the SAA. Mr. Derry then asked Mr. Kell if he should pay the voucher and was told "if it's right, pay it." In February 1992, Mr. Derry informed Mr. Kell of his belief that SAA personnel had engaged in unauthorized personal business during a trip to the University of Alaska at Nome.
 
 
 4
 In January 1993, Mr. Kell completed an analysis of the educational program, including concerns previously raised by Mr. Derry. In February, Mr. Kell prepared a summary report of the analysis for Mr. Michael Sheehy, which included suspicions of fraud and a recommendation for an investigation by the Office of the Inspector General (OIG). In May 1994, after learning that his report had not been forwarded to the OIG, Mr. Kell forwarded the report along with a memorandum charging that the initial failure to forward the report was a "gross abuse of authority" resulting in "a gross waste of government resources and the appearance that officials of the State of Alaska can with impunity disregard common ethical, moral and legal consequences of illegal action." [RA38]. The investigation that followed yielded no evidence of wrong-doing. [RA7].
 
 
 5
 In October 1994, Mr. Kell's field examiner position was moved from the Veterans Benefit Administration to the Veterans Health Administration. [RA29]. Mr. Kell then sought the intervention of the Office of Special Counsel (OSC) based on his belief that his reassignment was related to his contact with the OIG and previous contact with OSC. [RA31-34; RA36].
 
 
 6
 In February 1995, the OSC notified Mr. Kell that it was terminating its investigation, and informed him of his right to appeal to the Board. [RA41]. On February 7, 1996, the administrative judge issued an initial decision stating that Mr. Kell did not establish that the communications underlying his individual right of action constituted "protected disclosures" as defined by 5 U.S.C. § 2302(b)(8) (1994). [RA1-18]. On March 13, 1996, Mr. Kell filed a petition for review by the full Board, arguing that he had made a protected disclosure and that his reassignment should be evaluated as a part of a pattern of retaliation. The Board denied the petition for review, and Mr. Kell petitioned to this court.
 
 
 7
 Mr. Kell asserts that his reassignment violated 5 U.S.C. § 2303(b)(8) (1994), which protects employees from personnel actions which are taken because they have made a protected disclosure. Mr. Kell disputes the administrative judge's factual finding that he lacked a basis for a reasonable suspicion of fraud. In addition, Mr. Kell argues that the administrative judge improperly declined to consider whether a prior reassignment formed part of a pattern of punishing him for protected disclosures.
 
 
 8
 The court may reverse a decision of the Board if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; procedurally deficient; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); see, e.g., Frederick v. Department of Justice, 73 F.3d 349, 351 (Fed.Cir.1996); Cheeseman v. Office of Personnel Management, 791 F.2d 138, 140 (Fed.Cir.1986). In making the determination of whether substantial evidence exists, however, the court should affirm all factual findings supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brewer v. United States Postal Service, 647 F.2d 1093, 1096 (Ct.Cl.1981) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).
 
 
 9
 The Whistleblower Protection Act of 1989(WPA), Pub.L. No. 101-12, 103 Stat. 16, provides that an individual in a position of authority shall not take, threaten to take, or fail to take a personnel action with respect to any employee because the employee made a protected disclosure. 5 U.S.C. § 2302(b)(8). An allegation of fraud constitutes a protected disclosure if the employee had a "reasonable belief" that fraud was occurring. See Ward v. Department of Army, 67 M.S.P.R. 482, 485 (1995).
 
 
 10
 The administrative judge analyzed Mr. Kell's disclosures of alleged wrong-doing in his February 1993 report. [RA10-15]. After evaluating the testimony of Mr. Sheehy, the acting VSO, as well as that of Mr. Derry and Mr. Kell, the administrative judge concluded that Mr. Kell did not have a reasonable belief that his disclosure divulged a violation of law. The administrative judge noted that Mr. Kell was "vague in explaining why he suspected fraud, stating that it was no single thing which caused him to suspect fraud, but rather the 'pattern' of events which lead him to this conclusion." [RA11]. Furthermore, after hearing Mr. Derry's testimony that the vouchers in question were later approved, the administrative judge concluded that Mr. Kell lacked a proper basis upon which to base a claim of fraud. [RA10].
 
 
 11
 The administrative judge also reviewed and rejected Mr. Kell's allegation that failure to forward his initial report constituted gross waste and abuse of authority. In this respect, the administrative judge discussed at length the elements of Mr. Sheehy's testimony, including his "facial expression, posture and tone of voice," which bolstered Mr. Sheehy's version of the story. [RA13]. "[I]n constrast [sic]," the administrative judge noted, "the appellant's testimony was generally vague and gave me the impression of one trying to rationalize his actions after the fact." [RA13]. These findings substantiated the finding that Mr. Kell did not provide any evidence showing a reasonable belief that the failure to forward his report constituted a gross waste of funds.
 
 
 12
 This court will not disturb determinations of a witness' credibility without a very substantial showing of reasons to reconsider these determinations. Griessenauer v. Department of Energy, 754 F.2d 361, 364 (Fed.Cir.1985). Such a determination is not disturbed lightly. See Dittmore-Freimuth Corp. v. United States, 390 F.2d 664, 685 (Ct.Cl.1968). In the instant case, the administrative judge provided explicit evidence of his determinations on credibility. Based upon review of the record before this court, petitioner does not present sufficient evidence to overcome the factual determination that he had no reasonable belief that fraud had occurred.