NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MITZI G. BAKER,**
*Petitioner*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent*

---

2024-1478

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-19-0187-W-1.

---

Decided: October 15, 2024

---

MITZI G. BAKER, Chicago, IL, pro se.

MEREDYTH COHEN HAVASY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before PROST, TARANTO, and STARK, *Circuit Judges*.

PER CURIAM.

In 2019, Mitzi G. Baker, an employee of the Social Security Administration (SSA) working at its Chicago National Hearing Center, filed an Individual Right of Action appeal with the Merit Systems Protection Board pursuant to 5 U.S.C. § 1221.  She complained that SSA had violated 5 U.S.C. § 2302(b)(8), (9) by taking five personnel actions against her in reprisal for her filing earlier appeals with the Board (in 2017 and 2018).  She filed the 2019 Board appeal after the Office of Special Counsel (OSC), in December 2018, had terminated its investigation of a complaint she filed with OSC under 5 U.S.C. § 1214(a) as a prerequisite to filing the Board appeal.  The assigned Board administrative judge, in an initial decision, denied Ms. Baker's request for corrective action, and the full Board, in its final order, affirmed the initial decision, including the result, while making a few modifications in the findings and rationale.  Ms. Baker appeals that decision.  We have jurisdiction, 28 U.S.C. § 1295(a)(9), and now affirm.

I

A

In February 2010, Ms. Baker started working as a Paralegal Specialist/Case Manager at SSA.  In 2015, SSA, accommodating her medical conditions, allowed her to work at home for at least three days a week, specifying tasks that could be performed fully at home.

In March 2016, SSA assigned Ms. Baker to be a case manager for Administrative Law Judge (ALJ) Kramzyk on a temporary basis.  In response, she filed a complaint with OSC, alleging that the assignment impaired the earlier work-location accommodations and constituted retaliatory action.  After OSC denied Ms. Baker's request, she filed an IRA appeal to the Board in 2017.  The assigned Board administrative judge, in an initial decision, denied relief, *Baker v. SSA*, CH-1221-17-0318-W-1, 2018 WL 7635920

(M.S.P.B. Mar. 15, 2018), but the full Board vacated the initial decision and remanded for a new hearing before a different administrative judge, *Baker v. SSA*, CH-1221-17-0318-W-1, 2022 M.S.P.B. 27, 2022 WL 3129026, at *1, ¶ 1 (M.S.P.B. Aug. 4, 2022). Meanwhile, in 2018, Ms. Baker, after exhausting her remedies with OSC, filed another IRA appeal with the Board, complaining that SSA had retaliated against her for the previous appeal by assigning her a performance evaluation for fiscal year 2017 that she said was too low; but the assigned Board administrative judge denied relief. *Baker v. SSA*, No. CH-1221-18-0412-W-1, 2020 WL 231221 (M.S.P.B. Jan. 10, 2020).

B

On October 29, 2018, Ms. Baker filed a third complaint—the complaint underlying this case—with OSC, alleging that SSA management had retaliated against her because of her previous appeals. After OSC terminated its inquiry of the third complaint, Ms. Baker filed an IRA appeal with the Board, alleging that SSA took five personnel actions against her in retaliation: (1) subjecting her to a hostile work environment, (2) not selecting her for a 120-day supervisory detail in June 2018, (3) denying her a performance award for fiscal year 2017, (4) issuing two performance ratings of 3 (successful) instead of 5 (outstanding) on her fiscal year 2018 performance evaluation, and (5) issuing her an official reprimand in September 2018.

The record reflects the following specific SSA actions. SSA assigned Ms. Baker to work for ALJ Fernandez-Rice in April 2018; transferred her to the Falls Church National Hearing Center in July 2018; did not select her for a detail in June 2018; denied her a fiscal year 2017 performance award in July 2018; gave her ratings of 3 on her fiscal year 2018 performance evaluation in October 2018; and reprimanded her officially in September 2018 for her unauthorized disclosure of other individuals' personally identifiable information.

The assigned Board administrative judge, in an initial decision on September 29, 2021, denied Ms. Baker's request for corrective action. Supplemental Appendix (SAppx) at 1. The administrative judge reasoned that Ms. Baker had shown that "she engaged in a protected activity when she exercised her Board appeal rights related to whistleblowing activity under Section 2302(b)(8)." SAppx6. As to the five personnel actions, the administrative judge rejected the charge of a hostile work environment, SAppx7–9, but found that SSA took the following four personnel actions: non-selection for a 120-day detail; denial of a performance award for fiscal year 2017; giving ratings of 3 in her fiscal year 2018 performance evaluation; and issuing an official reprimand, SAppx6–7. The administrative judge then found that, although Ms. Baker's protected activity was a contributing factor in the personnel actions taken against her, SAppx9–10, SSA proved by clear and convincing evidence that it would have taken the four personnel actions regardless of her protected activity, SAppx11–17—so relief was denied.

Ms. Baker filed a petition for full Board review of the initial decision. Appx1–25. The Board denied the petition and affirmed the initial decision with three modifications that did not alter the result. Thus, the Board found that the second appeal, along with the first, constituted protected activity that was a contributing factor in personnel actions. Appx4. In addition, while agreeing with the administrative judge that Ms. Baker had met the OSC-exhaustion requirement for only two events relevant to the hostile-work-environment assertion—the April 2018 assignment to work with ALJ Fernandez-Rice and the July 2018 transfer to Falls Church, Virginia—the Board, unlike the administrative judge, found that one of those events (the July 2018 transfer) was a significant change in working conditions itself qualifying as a "personnel action" under 5 U.S.C. § 2302(a). Appx6–11. And the Board supplemented the administrative judge's explanation of

why SSA would have taken the same personnel actions in the absence of the protected activities. Appx11–23. Because the Board agreed with the administrative judge's last finding (based on a supplemented explanation), the Board denied relief.

Ms. Baker timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

This court may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 (Fed. Cir. 2020). The petitioner bears the burden of establishing reversible error in the Board's final decision. *Sistek*, 955 F.3d at 953 (citing *Fernandez v. Department of the Army*, 234 F.3d 553, 555 (Fed. Cir. 2000)). "We review the Board's legal decisions de novo and its findings of fact for substantial evidence." *McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022). "Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Frederick v. Department of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## A

The Whistleblower Protection Act (WPA), as amended by the Whistleblower Protection Enhancement Act (WPEA), prohibits an agency from taking a personnel action against an employee in retaliation for making a protected disclosure or engaging in protected activity. 5 U.S.C. § 2302(b)(8), (9). An employee like Ms. Baker may file an Individual Right of Action (IRA) appeal invoking that prohibition, but she must first exhaust her remedies

with OSC.  5 U.S.C. § 1214(a); *see Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1328 (Fed. Cir. 2020).  In the IRA appeal, she must prove by a preponderance of the evidence that (1) she made a disclosure or engaged in an activity protected under the WPA; (2) her employing agency took a "personnel action" as defined by the WPA; and (3) the protected disclosure or activity was a contributing factor in the personnel action.  5 U.S.C §§ 1221(a), 1221(e)(1), 2302(b)(8), (9); *see Sistek*, 955 F.3d at 953.  Covered personnel actions include a detail, transfer, or reassignment; a decision concerning pay, benefits, or awards; disciplinary or corrective action; a performance evaluation; or any other significant change in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A).  The employee may meet the contributing-factor requirement through showing, by a preponderance of the evidence, that (1) the official taking the personnel action knew of the protected disclosure or activity and (2) the time between the protected disclosure or activity and the personnel action is brief enough to allow a reasonable inference that the former contributed to the latter.  5 U.S.C. § 1221(e)(1); *see Miller v. Department of Justice*, 842 F.3d 1252, 1256 (Fed. Cir. 2016).

If the employee proves her prima facie case, the agency may nevertheless prevail by presenting "clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure" or protected activity.  5 U.S.C § 1221(e)(2); *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012).  When determining whether the agency would have taken the same actions, the Board examines the following factors: "(1) the strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated."  *Carr v.*

*Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (numerals added). "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore*, 680 F.3d at 1374. The Board's determination is reviewed on appeal to determine whether it is supported by substantial evidence, considering the record as a whole, including evidence that might detract from the finding ultimately made. *See Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019); *Whitmore*, 680 F.3d at 1368.

In this court, Ms. Baker makes essentially three arguments. We address them in turn.

B

Ms. Baker briefly challenges the Board's determination that, for her claim of a hostile work environment, she had met the OSC-exhaustion requirement for only two events making the environment a hostile one: the April 2018 assignment to work with ALJ Fernandez-Rice and the July 2018 transfer to Falls Church, Virginia. We see no reversible error. Of the several agency actions set forth in Ms. Baker's October 29, 2018 complaint to OSC, the Board could reasonably deem only the two Board-specified events as making the "environment" hostile (even if others were personnel actions). And while Ms. Baker has referred here and before the Board to other events as making the environment hostile, the Board could reasonably conclude that she has not identified where she presented those other events to OSC; indeed, some of those events occurred after OSC closed its investigation (and some were seemingly not presented to the Board at all). Given the clear role of the exhaustion requirement in requiring that OSC be given the opportunity to investigate charges, this failure on Ms. Baker's part leaves her with no basis to upset the Board's finding that the exhaustion requirement restricted the

hostile-work-environment claim to the two Board-specified events.

C

Ms. Baker briefly suggests that the Board erred in concluding that the April 2018 assignment to work with ALJ Fernandez-Rice was not a "significant change in duties, responsibilities, or working conditions" under the pertinent part of the statutory definition of "personnel action." 5 U.S.C. § 2302(a)(2)(A)(xii). We see no reversible error. The Board had ample evidence to support its finding that assignment to a particular ALJ was a familiar agency practice and that Ms. Baker had not proven how this assignment was out of keeping with that practice or was a demotion. Appx9–11.[1] Ms. Baker has not provided any basis on appeal for disturbing those findings.

D

Ms. Baker focuses most of her attention in this court on challenging the Board's determination that the agency carried its burden of proving that it would have taken the identified personnel actions even if the protected disclosures and activities at issue had not occurred. We see no reversible error.

---

[1]    To the extent that Ms. Baker suggests here that her reassignment was distinctive in violating an earlier disability-accommodation measure the agency had adopted for her benefit, she did not timely present that contention to the Board in this proceeding. *See* SAppx9, 169 n.9. Moreover, Ms. Baker asserted in this court, in her Statement Concerning Discrimination pursuant to Federal Circuit Rule 15(c), that she had not presented to the Board a claim of disability discrimination. ECF No. 6.

1

Challenging the Board's finding that SSA showed that it would not have selected her for the 120-day detail as a supervisory case manager even in the absence of her protected activity, Ms. Baker makes several arguments. She argues that the Board erred in multiple respects: by placing too much weight on her interpersonal skills ratings in her previous performance reviews; by incorporating into the *Carr* analysis her 2018 performance assessment, which occurred after her supervisor became aware of the 2017 appeal; by giving little weight to her 2019 performance award, which took place after the detail; by ignoring her previous work performance evaluations and associated awards and recognitions; by finding without evidence that the individual who was selected for the detail possessed equal or superior credentials; and by giving little weight to the connection between Ms. Baker's conflicts with management and her protected activities. She also argues, in discussing the second *Carr* factor, that the Board required her to show retaliatory motive, in violation of the Supreme Court's recent decision in *Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024), which involved the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1541A. Finally, with respect to the third *Carr* factor, she deems it important that SSA did not identify instances of taking the same personnel action with a non-whistleblower.

We see no basis for disturbing the Board's finding about the non-selection for the detail as a supervisory case manager. Appx13–15. Regarding the first *Carr* factor, there was substantial evidence of reasons for that non-selection independent of the protected activity: Ms. Baker was not the best-qualified applicant, and the agency saw problems with her interpersonal skills, indicated by her previous performance evaluations and her interactions with ALJ Fernandez-Rice. *See* Appx13–14; SAppx78–81. The Board considered detracting evidence, namely her temporary supervisor's positive April 2018 performance

discussion notes and her 2019 performance evaluation in which she received a rating of 5 for interpersonal skills, but it did and reasonably could ultimately find that this evidence did not outweigh SSA's evidence that it would have not selected Ms. Baker for the detail.  Appx14.

Regarding the second *Carr* factor, the Board found that Ms. Baker's supervisors, who were named and implicated by Ms. Baker's 2017 Board appeal, may have had a personal or institutional motive to retaliate but that the strength of any such motive was limited by the fact that no evidence showed that the supervisors faced adverse consequences of being disciplined due to Ms. Baker's allegations.  Appx14–15; *see Rickel v. Department of the Navy*, 31 F.4th 1358, 1366 n.4 (Fed. Cir. 2022) (noting significance of this limiting fact).  Moreover, the Board did not impose on whistleblower complainants a burden to show retaliatory motive: The only burden it imposed on Ms. Baker was to make out the prima facie case (which does not require proof of such a motive), which the Board held she did.  To consider the existence and strength of a retaliatory motive as a logical aspect of assessing whether the agency had carried *its* burden to prove that it would have taken the same action in the absence of the protected activity is not to place a burden of proving a retaliatory intent on the whistleblower complainant.  *Murray*, which does not arise under the WPA, is not to the contrary even for the statute it involved.

Regarding the third *Carr* factor, the Board noted that the agency had not selected certain other individuals for the detail but that, without information about the whistleblower status of those individuals, this evidence did not support the agency.  Appx15.  But the Board quite reasonably viewed this factor as having little weight compared to the other evidence, which therefore controlled.  Appx15; *see Rickel*, 31 F.4th at 1364–66.

2

Ms. Baker makes several arguments in challenging the Board's finding that SSA showed that it would have transferred her to the Falls Church, Virginia National Hearing Center in July 2018 even in the absence of the protected activity. Appx15–17. She cites the recent Supreme Court decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), to argue that her transfer changed her status, terms, conditions, and privileges of employment. Ms. Baker repeats the arguments (discussed above) that the Board, in its analysis of the second *Carr* factor, added in an additional element related to the motive to retaliate and that SSA produced no evidence regarding the third *Carr* factor.

We see no basis for disturbing the Board's determination on the July 2018 transfer. There was ample evidence that the Falls Church National Housing Center required additional staff, that Ms. Baker said that she did not want to be assigned to ALJ Fernandez-Rice or any other ALJ, and that ALJ Fernandez-Rice (to whom Ms. Baker had been temporarily assigned in April 2018) was unhappy with her interactions with Ms. Baker. *See*, *e.g.*, SAppx64–67, 78–81, 88, 90, 157. The propriety of relying on such evidence for finding that the transfer was independent of the protected activity is unaffected by the point in *Muldrow* cited by Ms. Baker: Here, the Board *agreed* with Ms. Baker that the July 2018 transfer was a significant change qualifying as a "personnel action" under the WPA. Moreover, the Board could reasonably find this first-factor analysis to outweigh any role of the second and third *Carr* factors, properly discounting the latter role for reasons similar to those addressed above in discussing the detail issue.

3

Ms. Baker also challenges the Board's finding that SSA showed that it would have withheld a fiscal year 2017 Recognition of Contribution performance award even in the

absence of the protected activity. Appx17–19. She argues that the Board improperly relied on her supervisor's affidavit and ignored evidence favorable to her position on this issue, such as evidence that her supervisor had motive to retaliate. And she repeats the points about the second and third *Carr* factors that we have already discussed and rejected in addressing other personnel actions, points not materially different for the present issue.

Substantial evidence supports the Board's reliance on SSA's legitimate reason to deny Ms. Baker the award—that she had received a disciplinary action during fiscal year 2017. *See, e.g.*, SAppx45–54, 94–95. Although a supervisor's decision to withhold this award in light of an employee's previous disciplinary actions is discretionary, Ms. Baker's supervisor sought guidance on whether withholding the award was appropriate, and she was told that it would be. SAppx38, 91–92, 95, 157–58. Ms. Baker alleges that evidence on the record detracts from SSA's case, but she does not identify any such record evidence. For this personnel action, like the ones discussed above, the other two *Carr* factors do not require a different overall finding from the Board, which found some motive to retaliate, but that the motive was slight because the supervisor who withheld the award did not face adverse consequences due to the 2017 Board appeal and was not involved in the actions that were the subject of the 2018 Board appeal. Appx18. We conclude that the Board reasonably found the first-factor analysis to determine the result of this agency-rebuttal inquiry.

4

The Board found that SSA, even in the absence of the protected activity, would have given Ms. Baker the ratings of 3 it gave her on the fiscal year 2018 performance evaluation. Appx19–21. For this performance evaluation, she obtained ratings of 5 (outstanding) for the categories "demonstrates job knowledge" and "achieves business

results" and ratings of 3 (successful) for "interpersonal skills" and "participation," for an overall score of 4. SAppx103–07. Ms. Baker argues that the Board did not properly consider the record evidence and that SSA "established a continuous pattern of retaliatory acts by management" to dissuade her from engaging in protected activity. Corrected Brief for Petitioner at 24. And she again contends that the Board erred in adding a requirement to show a motive to retaliate.

The Board had substantial evidence from which to make its independence finding. The ratings of 3 for interpersonal skills and participation were supported by various email exchanges and previous performance evaluations. Appx20; *see, e.g.*, SAppx78–81, 83, 88. The Board also reasonably found that while SSA management may have had personal or institutional motives to retaliate, there is no evidence that Ms. Baker's supervisor, who performed this personnel action, suffered adverse consequences, so any motive was slight. SAppx20–21. In these circumstances, the Board could reasonably find that the agency made its rebuttal case despite the absence of significant *Carr* factor three evidence supporting the agency, as previously discussed.

5

Finally, Ms. Baker contends that the Board erred in its determination that SSA would have issued the September 2018 official reprimand in the absence of the protected activity. Appx21–23. The basis for the reprimand was Ms. Baker's disclosure of personally identifiable information of SSA claimants in multiple documents she submitted to the Board as part of her June 2018 Board appeal. SAppx100. Ms. Baker alleges that SSA should not have issued her the reprimand since she took remedial steps—she redacted and resent the documents. Moreover, she argues that disciplinary action for the disclosure was inappropriate because the Board is a secure partner of SSA and may receive

personally identifiable information over email. And she repeats the arguments about the second and third *Carr* factors that she has made for the other personnel actions, which we have already discussed.

Substantial evidence supports the Board's finding that SSA would have reprimanded Ms. Baker for her disclosure of SSA claimants' personally identifiable information even in the absence of her protected activity. The evidence established that SSA had a legitimate reason to issue the reprimand: to discipline Ms. Baker for her disclosure of SSA claimants' information, including their names, phone numbers, and social security numbers, an event that Ms. Baker herself does not deny. That disclosure violated agency policy, at least because the disclosure was not necessary or even relevant to Ms. Baker's Board appeal. *See* Appx21–22; SAppx11–13, 57–58, 96–97. The disclosure was a violation even though Ms. Baker may have stemmed its future effects by submitting redacted documents, and there was evidence of the agency taking its nondisclosure policy very seriously. *See* SAppx133–41 (showing that SSA reprimanded National Hearing Center employees for just one disclosure of personally identifiable information). Any secure-partner relationship between SSA and the Board for email, moreover, is immaterial, at least because Ms. Baker hand-delivered documents with personally identifiable information to the Board. Appx22; SAppx11.

The Board could weigh the *Carr* factors overall as supporting the agency on this issue, as on the previously discussed issues, for the reasons discussed above. As with those issues, the Board found that Ms. Baker's supervisor could have had personal or institutional motive to retaliate, but that such motive was slight since there is no evidence that she suffered adverse consequences from the protective activity. Appx22–23. And the evidence on the third *Carr* factor is at best neutral for Ms. Baker; indeed, the Board found that it slightly favors the agency. Appx23. In short, the Board's finding that SSA would have taken

the personnel action absent the protected activity is supported by substantial evidence.

## III

For the foregoing reasons, we affirm the Board's denial of Ms. Baker's request for corrective action in her Board appeal.

The parties shall bear their own costs.

**AFFIRMED**