NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**JEFFREY FORSYTHE,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2024-1955

---

Petition for review of the Merit Systems Protection Board in Nos. SF-0752-20-0266-C-1, SF-0752-20-0266-X-1.

---

Decided: January 14, 2025

---

JEFFREY FORSYTHE, Long Beach, CA, pro se.

NELSON KUAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM.

---

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

Jeffrey Forsythe was employed by the United States Department of Homeland Security (DHS). When he left his job, he alleged that his resignation had been wrongfully forced, and in 2021 he and DHS settled the dispute. Under the settlement agreement, Mr. Forsythe was entitled to receive back pay for certain periods between 2017 and 2021. After DHS calculated his back pay based on earnings statements submitted by Mr. Forsythe, he filed a petition for enforcement of the settlement agreement before the Merit Systems Protection Board, asserting, among other things, that DHS miscalculated the back pay owed. The Board-assigned administrative judge (AJ) determined that DHS had partially breached the settlement agreement and ordered DHS to recalculate Mr. Forsythe's back pay. DHS petitioned the full Board to review the AJ's order to recalculate, and Mr. Forsythe cross-petitioned for review of other aspects of the AJ's initial decision. The full Board granted DHS's petition, vacated the AJ's order requiring DHS to recalculate Mr. Forsythe's back pay, and dismissed Mr. Forsythe's cross-petition. *Forsythe v. Department of Homeland Security*, 2024 WL 1599152 (M.S.P.B. Apr. 11, 2024) (*Final Order*). On Mr. Forsythe's appeal to us, we affirm.

I

Mr. Forsythe, after alleging that he had been unlawfully forced to resign on August 25, 2017, from his position at the Transportation Security Administration (TSA), a division of DHS, entered into a settlement agreement with DHS in 2021. *Final Order*, at *1; *Forsythe v. Department of Homeland Security*, MSPB Docket No. SF-0752-20-0266-I-1, Initial Appeal File, Tab 38 at 4–10 (*Settlement Agreement*). Under the settlement agreement, Mr. Forsythe was to be reinstated to a Federal Air Marshal

position, retroactively to August 26, 2017. *Settlement Agreement*, at 4.[1]

In addition to reinstatement, the agreement provided that DHS would compensate Mr. Forsythe for the period between August 26, 2017, and the date of his reinstatement in 2021. *Final Order*, at \*1; *Settlement Agreement*, at 4–5. Specifically, those three and a half years were segmented into six month periods, which were designated in the settlement agreement as alternating between leave-without-pay (LWOP) status and pay status. *Final Order*, at \*1. The first half of each calendar year (January through June) was a LWOP period, and the second half (July through December) was a pay period. *Id.* For the pay periods, DHS agreed to pay Mr. Forsythe "the appropriate amount of back pay, commensurate with the Agency's Management Directive No. 1100.55-10, *Back Pay*, and the Agency's Handbook to MD 1100.55-10." *Id.*; *Settlement Agreement*, at 4–5; *see also Forsythe v. Department of Homeland Security*, MSPB Docket No. SF-0752-20-0266-C-1, Compliance and Petition for Review File, Tab 1 at 46–60 (*Handbook*), 61–66 (*Management Directive*). Under TSA Handbook to Directive No. 1100.55-10, back pay includes "[a]ny gross pay . . . to which the employee would have been entitled" minus "[a]ny amounts earned by an employee from other employment . . . undertaken during the time the employee was separated." *Handbook*, at 6–7.

Mr. Forsythe was employed by American Airlines during the relevant 2017–2021 period, so DHS deducted his earnings from that job when calculating the back pay it would pay. Mr. Forsythe submitted a declaration on July 29, 2020, stating that his "regular earnings . . . not including bonuses" from American Airlines were about

---

[1]  For the *Settlement Agreement*, *Management Directive*, and *Handbook*, we cite to the page numbers listed on those documents in the MSPB Case Files.

$90,000 for 2018, $96,000 for 2019, and $54,000 for a portion of 2020—a total of about $240,000. Appx. 74.[2] Mr. Forsythe later submitted "year-end pay statements from American Airlines" that indicated higher annual earnings overall, totaling about $366,000 for 2018–2020. S. Appx. 24.[3] The year-end pay statements, unlike Mr. Forsythe's declaration, included incentive payments and bonuses from American Airlines "received primarily during the months of January through June of each year," *i.e.*, the LWOP periods. S. Appx. 79. DHS "requested no other information from Mr. Forsythe" to calculate his deduction. S. Appx. 76. DHS calculated the deduction for each six-month pay period by "cut[ting] in half" his annual earnings, and because the deduction amount "exceeded [Mr. Forsythe's] TSA earnings, there [was] no back pay due." S. Appx. 79.

On June 17, 2021, Mr. Forsythe petitioned the Board for enforcement of the settlement agreement, alleging that DHS incorrectly calculated his back pay. Specifically, Mr. Forsythe argued, regarding the deductions based on outside earnings (from his private employment), that DHS should have used "actual numbers from the actual period[s]" of July through December rather than using his annual earnings divided in half, because the basis DHS used "captured . . . bonuses which otherwise would not have been reflected." S. Appx. 79. Mr. Forsythe also argued, regarding the government pay from which deductions were made, that DHS's calculation wrongly excluded overtime pay, performance-based increases, per diem allowances, bonuses, and interest. Mr. Forsythe again made those arguments in his October 4, 2021 pre-

---

[2]    "Appx." refers to the Appendix submitted with Mr. Forsythe's Informal Brief.

[3]    "S. Appx." refers to the Supplemental Appendix submitted with DHS's Informal Brief.

hearing submission, which also included arguments that he was entitled to differential pay for work at night and that DHS had failed to expunge Mr. Forsythe's resignation and reinstatement from his official personnel folder.

The Board's assigned AJ issued an initial decision on the petition for enforcement on February 9, 2022. *Forsythe v. Department of Homeland Security*, 2022 WL 445103 (M.S.P.B. Feb. 9, 2022) (*Initial Decision*).[4]  The AJ determined, in relevant part, that DHS had not breached the settlement agreement's back-pay requirements either by calculating deductions based on annual earnings, which included bonuses earned during LWOP periods, or by calculating gross pay without including overtime pay or per diem allowances. *Id.* at 6–10, 17–22.  The AJ also determined that DHS had not breached the settlement agreement by not expunging Mr. Forsythe's resignation. *Id.* at 4–6. Yet, despite finding no breach of the settlement agreement for DHS's deduction calculation, the AJ ordered DHS to recalculate the deductions to Mr. Forsythe's back pay "based on the appellant's actual earnings during the back pay period (*i.e.*, July 1, 2018 through December 31, 2018, July 1, 2019 through December 31, 2019, and July 1, 2020 through December 31, 2020)." *Id.* at 27.

DHS sought full Board review of the AJ's decision, arguing that "it should not be required to recalculate [Mr. Forsythe's] outside earnings because it did not breach the settlement agreement." *Final Order*, at *2. Mr. Forsythe, by cross-petition, also sought full Board review, arguing that DHS had "breached the settlement agreement when it improperly calculated his outside earnings, excluded overtime and per diem allowances from his back pay, and improperly reduced his night differential pay by using a

---

[4]     For the *Initial Decision*, we cite the page numbers on the version provided in the Supplemental Appendix.

sample year that was not representative of his regular schedule." *Id.*

The Board agreed with the AJ that DHS's deduction calculation was compliant with the settlement agreement. *Id.* at \*3. Because Mr. Forsythe "did not provide the agency with his individual paystubs until the prehearing submissions," and DHS "would have had no reason to know that the bonus schedule of American Airlines coincided with the periods the appellant was in LWOP status," the annual earnings methodology was reasonable based on the documentation Mr. Forsythe actually submitted to DHS. *Id.* And because there was no breach, the Board found that "it was improper for the [AJ] to order a correction" and vacated the order requiring DHS to recalculate Mr. Forsythe's back pay. *Id.*

The Board denied Mr. Forsythe's cross-petition, finding that "the agency's exclusion of overtime pay and per diem allowances, as well its calculation of the night differential pay, [wa]s 'commensurate' with its Handbook and Management Directive," which were "silent on th[o]se topics." *Id.* at \*3–4. The Board also dismissed Mr. Forsythe's petition for enforcement as "moot" because there was "no further relief that the Board [could] provide." *Id.* at \*4–5.

Mr. Forsythe timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner bears the burden of establishing reversible error in the Board's final decision. *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953

(Fed. Cir. 2020). We review the Board's legal conclusions without deference and its findings of fact for substantial-evidence support. *McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022). "Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Frederick v. Department of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A party breaches a settlement agreement by being "in material non-compliance" with its terms. *Gilbert v. Department of Justice*, 334 F.3d 1065, 1071 (Fed. Cir. 2003). Whether a breach has occurred is a mixed question of law and fact: Determining what the parties did or did not do is a factual inquiry, while determining what was required under the settlement agreement is a legal one. *Id.* at 1071–72.

## A

Mr. Forsythe challenges the Board's decision on the ground that DHS's deduction calculation breached the settlement agreement by including outside-employment bonuses Mr. Forsythe earned during the LWOP periods. Forsythe Informal Br. at 4. We reject this challenge.

The Board found, and Mr. Forsythe does not dispute, that Mr. Forsythe submitted only annual-earnings information about his relevant outside earnings (which included bonuses earned for time including LWOP periods) as his response to DHS's request for "*complete* wage and earning information." *Initial Decision*, at 8 (emphasis added); *see also Final Order*, at *3. Although Mr. Forsythe argues that "[t]he additional pay statements were subsequently provided at a reasonable time thereafter," those additional statements were not provided until *after* Mr. Forsythe filed his petition for enforcement—after DHS made the back-pay calculation. Forsythe Informal Br. at 12; *Final Order*, at *3 (citing *Forsythe v. Department of*

*Homeland Security*, MSPB Docket No. SF-0752-20-0266-C-1, Compliance and Petition for Review File, Tab 18 at 76–118). DHS did not breach the settlement agreement by using the information Mr. Forsythe provided to it at the time the calculation was to be made and was made.

Although Mr. Forsythe argues that DHS should have requested paystubs because of its "responsibility . . . to ensure accurate calculations," Forsythe Informal Br. at 8 (citing *Rosario-Fabregas v. Department of the Army*, No. 22-2280, 2023 WL 3702393, at \*5–6 (Fed. Cir. May 30, 2023)), the Board found that Mr. Forsythe, not DHS, had "reason to know that the bonus schedule of American Airlines coincided with the periods [Mr. Forsythe] was in LWOP status, and thus, the onus was on [Mr. Forsythe] to provide the agency with the information that [Mr. Forsythe] deemed necessary," *Final Order*, at \*3. The AJ explained that DHS "did not have any information that would reflect whether the appellant's pay during the final six months of each year was different than in the first six months." *Initial Decision*, at 9. Given Mr. Forsythe's superior knowledge about his own pay schedule, and his failure to "provide the agency with his individual paystubs until the prehearing submissions," the Board had substantial evidence to determine that "it was reasonable for the agency to use [his] documentation to calculate [his] outside earnings." *Final Order*, at \*3. And Mr. Forsythe has made no persuasive showing that it was legal error for the Board to interpret the settlement agreement to permit such use.

Mr. Forsythe asserts that DHS intentionally "created complexity . . . to reduce their back pay liability," Forsythe Informal Br. at 4, but that argument was not presented to the AJ and therefore was forfeited. *See Bosley v. Merit Systems Protection Board*, 162 F.3d 665, 668 (Fed. Cir. 1998) (requiring party to "raise an issue before the [AJ]" for it to be preserved for review); *see also Holmes v. United States Postal Service*, 987 F.3d 1042, 1047 (Fed. Cir. 2021).

Likewise forfeited were Mr. Forsythe's arguments that he "reasonably believed that the [background] [i]nvestigator would request certified copies directly from [American Airlines]," Forsythe Informal Br. at 12, and that a cited checklist "calls out 'pay period level documents as supporting info,'" *id.* at 8. And Mr. Forsythe does not cite to any evidence in the record to support his allegation that DHS acted in "bad faith." *See id.* at 1, 23–25.

Accordingly, we see no reversible error in the Board's conclusion that DHS did not breach the settlement agreement and that it was improper for the AJ to require DHS to recalculate back pay.

B

Next, Mr. Forsythe argues that the Board erred in upholding DHS's exclusion of overtime and per diem allowances from the pre-deduction amount in calculating back pay. *Id.* at 14–22. We disagree.

The settlement agreement indicates that the "appropriate amount of back pay" should be determined "commensurate with the Agency's Management Directive No. 1100.55-10, *Back Pay*, and the Agency's Handbook to MD 1100.55-10," and there is no indication in the Management Directive or Handbook that overtime pay and per diem allowances should be included. *Settlement Agreement*, at 4–5; *Management Directive*, at 3, 5; *Handbook*, at 6–7. The Board correctly concluded that, because the TSA Handbook "does not include any reference to overtime pay [or] per diem allowance," DHS's "exclusion of overtime pay and per diem allowances . . . is 'commensurate' with its Handbook and Management Directive" and thus does not constitute a breach of the settlement agreement. *Final Order*, at *4 (citing *Handbook*, at 6–7).

Mr. Forsythe argues that consideration of overtime pay and per diem allowances is required because the

Management Directive "was based on the Title 5 Back Pay Act," which he understands to require such consideration. Forsythe Informal Br. at 14–15. But he did not present that that argument to the AJ, and the argument is therefore forfeited. Accordingly, we see no reversible error in the Board's ruling that the exclusion of overtime pay and per diem allowances did not breach the settlement agreement. *Final Order*, at \*4.

## C

Finally, Mr. Forsythe argues that the Board erred by not requiring DHS to expunge his resignation from his Official Personnel Folder. Forsythe Informal Br. at 20–21. We see no such error. As the AJ explained, "[t]he term 'reinstate' in [the relevant] provision [of the settlement agreement], and the identified effective date, reflect that the appellant would be considered to be off the rolls prior to August 26, 2017, which is consistent with the appellant's resignation remaining in the record." *Initial Decision*, at 5. In other words, if Mr. Forsythe's resignation on August 25, 2017, were expunged, it would not make sense for the settlement agreement to require that he be reinstated on August 26, 2017. And Mr. Forsythe's arguments regarding TSA Form 1155-1A, Forsythe Informal Br. at 20–21, were not made before the AJ and, thus, were forfeited. Accordingly, we see no reversible error in the Board's conclusion that Mr. Forsythe's separation should not be expunged.

## III

We have reviewed the remainder of Mr. Forsythe's arguments and find them unavailing. Because there is no reversible error in the Board's decision, we affirm.

The parties shall bear their own costs.

### AFFIRMED